IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GLORIA JEAN DIXON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil No. **02-1208-CJP**[1] |
| ) | |
| **ILLINOIS DEPARTMENT OF** ) | |
| **NATURAL RESOURCES, et al.**, ) | |
| ) | |
| Defendants. ) | |

## ORDER

**PROUD, Magistrate Judge:**

Plaintiff Gloria Jean Dixon, an African-American woman, has filed suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging her former employer, the Illinois Department of Natural Resources, subjected her to "a pattern of continuous discrimination" based on her race, sex and retaliation.[2]  **(Doc. 1, Complaint, p. 1, ¶ 6).**

Before the Court are defendant Department of Natural Resources' amended  motion for summary judgment and memorandum in support thereof.  **(Docs. 70 and 71 (Exhibit Y is located at Doc. 71; Exhibits A-X are located at Doc. 38 and are adopted by reference)).** Also before the Court are plaintiff Dixon's memorandum of law in opposition to the motion, and her response to the statement of undisputed material facts in the motion for summary judgment. **(Docs. 72 and 73).**  Defendant has filed brief responses.  **(Docs. 76 and 77).**

---

[1]In accordance with 28 U.S.C. § 636(c), upon the written consent of the parties, U.S. District Judge Michael J. Reagan referred this action to the undersigned Magistrate Judge for all further proceedings and final resolution.  **(Doc. 66).**

[2]Other claims and defendants were previously dismissed.  **(Doc. 16).**

1

**Preliminary Procedural Issues**

The Court notes that defendant's memorandum in support of its motion **(Doc. 71)** is 21 pages long; and plaintiff's memorandum in opposition to the motion for summary judgment **(Doc. 72)** is 24 pages long, both exceeding the 20 page limit prescribed by Local Rule 7.1(d). Plaintiff's 14 page response to defendants statement of undisputed facts **(Doc. 73)**– which is an integrated part of the motion for summary judgment– is an obviously improper attempt to expand plaintiff's already oversized brief in opposition to the motion to 38 pages.  The Court will accept defendant's oversized memorandum in support of its motion **(Doc. 71)**, and plaintiff's memorandum in support **(Doc. 72)**, but plaintiff's response to defendants statement of undisputed facts **(Doc. 73)** is **STRICKEN**.  Nevertheless, the Court will deem defendant's "statement of undisputed material facts" **(Doc. 71, pp. 3-6)** to be in dispute.[3]

**Legal Issues**

The defendant Department of Natural Resources argues:

1. Plaintiff's harassment claim is time barred;

2. Plaintiff is precluded from re-litigating those issues which were conclusively resolved by the Illinois Civil Service Commission and the Circuit Court of St. Clair County;

3. Plaintiff failed to prove that she was the victim of a hostile or intimidating work environment;

4. Plaintiff is unable to prove that she was meeting the Department's legitimate employment expectations;

5. There is no evidence that similarly situated employees, outside of

---

[3]In April 2003, the Local Rules were amended to eliminate the requirement that there be a statement of uncontested facts.  Therefore, the Court does not perceive any prejudice to plaintiff by striking her "response."

       plaintiff's class, received more favorable treatment in the terms and conditions of employment;

6.     Defendant had a legitimate non-discriminatory reason for discharging Plaintiff; and

7.     Plaintiff did not establish pretext.

**(Doc. 70, p. 2).**

## Analysis

### 1. Time Bar

Defendant argues that two of the incidents plaintiff complains of– a cup of urine being left on her desk in 1999, and being referred to as a "bitch" in 2000– are time barred. 42 U.S.C. § 2000e-5(e) dictates that an individual must initiate a sex discrimination claim by filing an EEOC charge within 300 days of the alleged discrimination, or those charges are time barred. ***Hall v. Bodine Electric Co.*, 276 F.3d 345, 352 (7th Cir. 2002).** Plaintiff's EEOC complaint was filed March 13, 2002; therefore, the 300-day period encompasses as far back as May 17, 2001.[4] Plaintiff counters that she has alleged a hostile work environment – a single, unitary violation– based on the cumulative effects of multiple incidents dating back as far as the summer of 1999.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that, for purposes of Section 2000e-5(e), when a hostile environment is alleged, as opposed to a discrete discriminatory act, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability. ***Nat'l R.R.*, 536 U.S. at 117.** The high court explained: "In truth, all other things being equal, there is little difference between the two

---

[4]By defendant's calculation, the cutoff date is May 13, 2001.

scenarios as a hostile environment constitutes one 'unlawful employment practice' . . . each act is part of the whole." *Id.* **at 118.**  However, if an act has no relation to "the whole" and falls outside the 300 day time period, that act is time barred. *See Id..*  "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* **at 116.**   "A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* **at 103.**

      Characterizing a series of acts as a "hostile environment" does not necessarily make it so, nor does it serve as a cure-all for a blown statute of limitations.  For example, in *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854 (7th Cir. 2005), the plaintiff contended multiple employment decisions over a year's time created a racially hostile work environment, but the Court of Appeals for the Seventh Circuit ruled, "[f]or purpose of the statute of limitations, discrete discriminatory employment actions . . . are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts."  *Id.* **at 860-861.**  Plaintiff Beamon's argument for equitable tolling of the 300-day period, based on his assertion that he had no reason to suspect racial discrimination until a pattern became apparent after approximately a year's time, was rejected because the possibility of racial discrimination would have been apparent earlier to a reasonable person.  *Id.*   Similarly, in *Lucas v. Chicago Transit Authority*, 367 F.3d 714 (7th Cir. 2004), certain employment acts (sending the plaintiff home without pay and suspending the plaintiff for a day for disobeying an order) were found to

be discrete acts and, consequently, were stripped away from the chain of acts purportedly composing a hostile environment. The Court of Appeals further explained, "[t]he concept of *cumulation* suggests a critical limiting principle. Acts . . . so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." ***Id*. at 727 (emphasis in original).**

Plaintiff chronicles a series of acts between the summer of 1999 and March 8, 2002, when she was fired, and attributes them to sex discrimination, race discrimination and retaliation. Among the multitude of allegations, plaintiff alleges: being referred to behind her back as a "bitch"; finding urine on her desk; being told her colleagues would prefer to work with a white woman; being sent home for political activity, being orally reprimanded for not following instructions; being charged with falsification of government records (time/attendance records); being suspended for encouraging her sister to come to the work site to confront plaintiff's superior, Ruth Kendall; and being sent home and later fired for disobeying an order and saying to Ruth Kendall during an argument, "Heifer, if you go wash your hair and put on some makeup, maybe you will feel better." **(*See* Doc. 1; Doc. 72, pp. 10 and 12; and Doc. 38, Exhibits A-X).** A review of the record reveals that plaintiff overheard others referring to her as a "bitch" two or three times, and found a cup of urine on her desk during the time between the summer of 1999 and the end of 2000. **(Doc. 72, p. 12; and Doc. 48, Exhibit B (plaintiff's deposition), pp. 66-70 and 79-80[5]).** Obviously, these acts occurred far outside the 300-day period, which ended May 17, 2001. However, as noted above, the pertinent question is whether those acts are an

---

[5]Excerpts of plaintiff's deposition are contained at Doc. 38, Exhibit A, but the Court cites to the full transcript of plaintiff's deposition at Doc. 48, Exhibit B.

inseparable part of a series of events that legally comprise a hostile environment.

Plaintiff's deposition testimony makes clear two distinct veins of possible discriminatory conduct: (1) race and sex discrimination by male coworkers occurring between the summer of 1999 and the end of 2000; and (2) race and sex discrimination by or related in some way to Ruth Kendall, occurring between February 2001 and March 8, 2002.  (***See*** **Doc. 48, Exhibit B).**  The acts falling in each grouping are discrete in time and nature, do not reinforce each other and cannot reasonably be linked together into a single chain.  Plaintiff's EEOC complaints support such a time break because they indicate the discrimination began in the later part of 2001.  (***See*** **Doc. 38, Exhibits V and W).**

Plaintiff does not specifically attribute being called a "bitch" and having a cup of urine placed on her desk to a particular genre of discrimination, but the Court will infer that those incidents are part of a chain of race and sex discrimination from the assertion by plaintiff's colleague Jerome "Jake" Harris in the first half of 2000 that "they"– generally referring to the male workers– did not want plaintiff there; they wanted a white woman.  **(Doc. 48, Exhibit B, pp. 71-73).**  Harris's comment would clearly alert a reasonable person to the possibility that the "bitch" remarks and urine incident could possibly be the result of race and/or sex discrimination. Also, at that time, plaintiff was the only female at the work site.  **(*See* Doc. 38, Exhibit T, p. 54).**

Although the acts occurring in 2001 and 2002 follow chronologically, plaintiff clearly attributes them to the animosity between Ruth Kendall and herself, which plaintiff relates to race and Kendall's perception that plaintiff was jealous of the fact she, Kendall, had children).  **(*See* Doc. 48, Exhibit B, pp. 77 and 106-107; and Doc. 38, Exhibit E, pp. 19 and 23).**  Internal investigator Theresa Cummings, concluded there was racial animosity and name calling between

plaintiff and Ruth Kendall, and employees began taking sides. **(Doc. 38, Exhibit T, pp. 50-52).**

For the aforestated reasons, the race and sex discrimination by male coworkers occurring between the summer of 1999 and the end of 2000– the "bitch" and "urine" incidents– cannot be linked to the later incidents. Therefore, those earliest incidents are time barred by Section 2000e-5(e). Insofar as plaintiff complains about receiving a letter from Ruth Kendall in February 2001, and being sent home from work by Kendall on May 9, 2001, those acts occurred outside the 300- day limitations period, but can generally be said to be part of the so-called "Ruth Kendall hostile environment." At this juncture, the Court does not have sufficient information to determine whether those acts constitute discrete employment acts which, in accordance with *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854 (7th Cir. 2005), and *Lucas v. Chicago Transit Authority*, 367 F.3d 714 (7th Cir. 2004), would render them time barred.

## 2. Res Judicata and Collateral Estoppel

Defendant argues that the doctrines of res judicata and collateral estoppel should preclude plaintiff from challenging the findings of fact and employment decision of the Illinois Civil Service Commission[6] discharging plaintiff for using inappropriate language and refusing to leave the work site.[7] Plaintiff first argues that defendant's failure to raise the affirmative defenses of res judicata and collateral estoppel in a motion to dismiss, and the intervening two year delay, constitute a waiver of those defenses. In the alternative, plaintiff contends the dismissal of her

---

[6]The Illinois Civil Service Commission decision was upheld on appeal to the Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois.

[7]Both defendant and plaintiff persist in referring to claims under 42 U.S.C. § 1981. U.S. District Judge Michael J. Reagan has made clear that there are no Section 1981 claims. **(Doc. 16, n. 1).**

7

appeal of the Civil Service Commission decision cannot be given preclusive effect because it was not based on the merits. Plaintiff notes that the Civil Service Commission decision pertains only to the March 8, 2002, incident/violations precipitating plaintiff's discharge, not all of the other alleged acts of discrimination.

Defendant properly preserved the affirmative defenses of res judicata and collateral estoppel in its answer to the complaint, as required by Federal Rule of Civil Procedure 8(c). **(Doc. 22, p. 8).** Plaintiff cites no precedent for deeming those affirmative defenses waived merely because defendant did not raise them in a Rule 12(b) motion to dismiss, but instead raised them in a Rule 56 motion for summary judgment. Since those affirmative defenses would undoubtedly require reference to matters outside the complaint, a Rule 12(b) motion to dismiss would have been an inappropriate procedural mechanism. *See* **Fed.R.Civ.P.12(b).** Defendant afforded plaintiff ample notice of its intent to raise res judicata and collateral estoppel, and plaintiff has cited no prejudice.

The doctrine of res judicata, codified at 28 U.S.C. § 1738, requires federal courts to give state court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such state." **28 U.S.C. § 1738*; Welch v. Johnson*, 907 F.2d 714, 719 (7th Cir. 1990).** However, *unreviewed* administrative proceedings are not given preclusive effect in Title VII litigation. ***University of Tennessee v. Elliott,* 478 U.S. 788, 796 (1986); Welch, 907 F.2d at 719.**

> [T]he determination of whether to apply res judicata in this context is a two-pronged inquiry: (1) whether the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action; and (2) whether the party against whom preclusion is asserted had a full and fair opportunity in the state proceedings to litigate the claims (i.e., whether the state proceedings satisfy minimum due process requirements).

*Welch*, **907 F.2d 719 (citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-482 (1982)).**  Under Illinois principles of res judicata, final adjudication *on the merits* is required.  *Welch*, **907 F.2d at 719-720 (citing *LaSalle National Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930-931 (7th Cir. 1988));** *see also Sterling v. Rockford Mass Transit District*, **784 N.E.2d 880, 885-886 (Ill. App. 2nd Dist. 2003).**

The Civil Service Commission ruling was appealed to the Circuit Court of St. Clair County, but defendant's motion to dismiss was granted, without prejudice, after plaintiff failed to appear for a hearing.  **(Doc. 72, Exhibits 1-3).**  The motion to dismiss asserted that plaintiff had failed to timely issue summons, and failed to name a necessary party.  **(Doc. 72, Exhibit 2).**  The Circuit Court's minute order does not specify upon which ground the motion to dismiss was granted.  **(Doc. 72, Exhibit 3).**  According to Illinois Supreme Court Rule 273, unless the order of dismissal states otherwise, an involuntary dismissal operates as an adjudication on the merits, *except* if the dismissal is for failure to join an indispensable party (and certain other enumerated situations).  Dismissal could have been based on the failure to join a necessary party.  Furthermore, in accordance with Illinois precedent*,* because the Circuit Court clearly did not consider the merits of the Civil Service Commission decision, and because the dismissal was without prejudice, it is not considered a decision on the merits.  ***Sterling v. Rockford Mass Transit District*, 784 N.E.2d 880, 885-886 (Ill. App. 2nd Dist. 2003).**  Consequently, res judicata will not act to preclude plaintiff's Title VII claims.


The doctrine of collateral estoppel pertains to issue preclusion, referring "'to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has

been actually litigated and decided in the initial action.'" *Welch*, **907 F.2d at 719 n**.**3**. Under Illinois law, issue preclusion bars litigation of an issue if the issue: (1) is identical to one decided in a prior adjudication; (2) was decided in a final judgment on the merits; and (3) was resolved in a proceeding in which the party against whom estoppel is asserted was a party or in privity with a party. *American National Bank & Trust Co. v. Regional Transportation Authority*, **125 F.3d 420, 430 (7th Cir. 1997);** *DuPage Forklift Service, Inc. v. Material Handling Services, Inc.*, **744 N.E.2d 845, 849 (Ill. 2001)**. Again, because there was no final judgment on the merits, there can be no collateral estoppel/issue preclusion.

### 3. The Merits of the Sex Discrimination Claim

Defendant contends that the allegations made by plaintiff, if true, do not rise to the level of actionable harassment. Defendant only references the "bitch" calling and "urine" incident. **(Doc. 71, p. 15).** Because the Court has already found that those acts are time barred, no further analysis is necessary.

### 4. The Merits of Plaintiff's Race Discrimination Claim

The parties appear to agree that the claims relating to Ruth Kendall allege race discrimination and retaliation– no reference to sex discrimination is made. (***See*** **Doc. 71, pp. 16- 18 and Doc. 72, pp. 12-20).**

> Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Lacking any direct evidence of racial animus, [a plaintiff must rely] upon the indirect method of proving discrimination established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this method, the plaintiff must first establish a prima facie case of discrimination. *Davis v. Con-Way Transp. Cent. Express, Inc.,* 368 F.3d 776, 784 (7th Cir.2004). If the plaintiff meets this burden, the burden shifts to the employer to present a legitimate and

>non-discriminatory reason for the employment action. *Id.* If the employer does so, the plaintiff must show that the proffered reasons are a pretext for discrimination. *Id.*
>
>>To make the prima facie showing, [a plaintiff] must show four elements: (1) he belongs to a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated others not in his protected class received more favorable treatment. *Id.*
>
> * * *
>
>>A similarly situated employee for purposes of proving discrimination refers to "employees who were 'directly comparable to [the plaintiff] in all material respects.'" [*Ajayi v. Aramark Business Services*, 336 F.3d 520, 532 (7th Cir. 2003) (quoting *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002)). To evaluate whether two employees are directly comparable, we consider all of the relevant factors, "which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision." *Id.* "Above all, we are mindful that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Id.*

***Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692-693 (7th Cir. 2005).**

Defendant asserts that plaintiff was not meeting the legitimate expectations of her employer, citing the multiple disciplinary actions taken against plaintiff, and her ultimate discharge for referring to a superior as a "heifer" and refusing to leave the work site. Defendant also contends that plaintiff cannot prove that similarly situated employees who engaged in the same or similar conduct were not discharged. In the event plaintiff can make out a prima facie case, defendant argues that she is unable to prove the defendant's reasons for firing plaintiff were a pretext for discrimination.

Plaintiff counters that her job performance evaluations indicate she had been meeting

expectations from November 1998 through March 2001[8]. **(*See* Doc. 72, Exhibits 8-12).** The final available report is an annual review, covering all of 2001, indicating plaintiff was meeting expectations in all respects except, based on violations of Department policy, that she was considered in need of improvement in "human relations." **(Doc. 72, Exhibit 13).** Plaintiff correctly observes that the final evaluation is problematic– it is incomplete and signed only by Supervisor Curtis Gathing, and it is undated. Plaintiff also cites Jerome Harris's statement in 2000 that the men wanted a white woman working there as evidence of race discrimination.

Plaintiff compares herself to four other employees, none of whom worked at her work site, who had similar disciplinary issues but were not immediately fired, as she was. **(Doc. 72, Exhibits 16-19).** Pursuant to a grievance resolution, site technician David Keeney, a white male, who had multiple disciplinary infractions– including telling his supervisor, "I ain't your fucking nigger," and explaining that he "kills the bear"– was permitted to resign, rather than being fired. **(Doc. 72, Exhibit 16).** Another white site technician, Brian Griffith, was fired for not providing physician's statements to support his disability leave, but was given an opportunity to rectify his behavior before being fired. **(Doc. 72, Exhibit 17).** Terry Klockenkamper, another white site technician, was not fired until he had made over a dozen obscene and/or derogatory statements and committed multiple safety and/or property violations. **(Doc. 72, Exhibit 18).** Photographer Charles Dees, who is white, was discharged after multiple absences where he failed to report as directed.

Defendant concedes, for the sake of argument, that plaintiff is a member of a protected

---

[8]The January 1, 2001, to May 1, 2001 report was signed in March 2001. **(Doc. 72, Exhibit 12).**

class– black/African Americans– thereby satisfying the first element of the prima facie case. **(Doc. 71, p. 17).**

Plaintiff's job performance evaluations support the notion that she was meeting her employer's legitimate expectations through March 2001, around the time when the alleged chain of acts began. The annual evaluation form for 2001 is incomplete, undated and, at best, creates a question of fact regarding whether plaintiff was meeting her employer's expectations, and whether all of the incidents during 2001 and 2002 were the byproduct of race discrimination. Therefore, the Court considers the second element of the prima facie case satisfied.

There is no dispute that plaintiff's firing constitutes an adverse job action. Other disciplinary actions taken during 2001 could also constitute an adverse job action for purposes of making out a prima facie case.

It is no wonder plaintiff cites cases from other circuits relative to the "similarly situated" element of the prima facie case; Seventh Circuit case law holds that "comparables" must be similarly situated *in all respects*. **Brummett**, 414 F.3d at 693 (citing ***Spath v. Hayes Wheels International-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000)).** "This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" ***Ineichen v. Ameritech*, 410 F.3d 956, 960-961 (7th Cir. 2005) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).** For example, in *Walker v. Board of Regents of University of Wisconsin System*, 410 F.3d 387 (7th Cir. 2005), a black, female assistant chancellor of student affairs was not deemed similarly situated to a white, male assistant chancellor for

university advancement, or a white, male director of admissions because the three occupied different positions, managing different parts of the university, despite the fact that staff complaints had been lodged against all three.  **Walker, 410 F.3d at 395-396.**

Plaintiff appears to have combed statewide for employees who might be similarly situated in terms of discipline, which is part of why the four "comparables" she cites are not similarly situated to her.  The four "comparables" work at different sites, perform different jobs and do not share the same supervisor.   Insofar as plaintiff might concede her discharge was warranted, but still contend that other disciplinary action taken during 2001 is actionable, she has still failed to make out a prima facie case because she has failed to cite a valid "comparable."  Finally, the Court must note that the assertion that plaintiff and her four "comparables" were treated differently is dubious.  Keeney's resignation was the byproduct of a grievance resolution, and Griffith, Klockenkamper and Dees were all fired after multiple incidents, which is similar to plaintiff's situation.

For the aforestated reasons, plaintiff has failed to present a prima facie case of discrimination; therefore, defendant is entitled to summary judgment relative to her race discrimination claim.  Consequently, the Court need not analyze whether plaintiff can show pretext.

### 5.  Plaintiff's Retaliation Claim

"To establish a *prima facie* case for unlawful retaliation, a plaintiff must prove three elements: (1) she engaged in statutorily-protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." **Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005) (quoting Krause v.**

*City of La Crosse,* **246 F.3d 995, 1000 (7th Cir. 2001)).**

On May 1, 2001, plaintiff filed an AFSCME Contract Grievance, alleging she was working in a hostile environment.  **(Doc. 72, Exhibits 22).**  Three additional AFSCME Contract Grievances were filed during 2001 regarding disciplinary action taken against plaintiff.  **(Doc. 72, Exhibits 23-25).**  In addition, by letter dated May 30, 2001, plaintiff informed her supervisor, Curtis Gathing, that she felt Ruth Kendall was generally harassing her.  **(Doc. 72, Exhibit 21).**  As discussed before, multiple disciplinary actions were taken against plaintiff in 2001 and she was ultimately terminated in 2002.  The deposition testimony of Kevin Tex Fernandez, the AFSCME shop steward who assisted plaintiff in her pursuit of two of her grievances, indicates that, in his opinion, there may have been a "conspiracy" involving Ruth Kendall and Curtis Gathing to provoke plaintiff and get her fired.  **(Doc. 72, Exhibit 20).**

Plaintiff raised the retaliation issue in her response to defendant's motion for summary judgment.  Defendant appears to have lost sight of the retaliation claim– it was not an issue raised in defendant's motion or response after the issue was raised by plaintiff.[9]  Based on the unrefuted evidence summarized above, the Court concludes that plaintiff has established a prima facie case of retaliation and that claim must proceed to trial.

**IT IS THEREFORE ORDERED** that, for the aforestated reasons, defendant's motion

---

[9] "Judges are not like pigs, hunting for truffles buried in briefs."  ***U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).**

15

for summary judgment **(Doc. 70)** is **GRANTED** relative to plaintiff's claims of sex discrimination and race discrimination.  Plaintiff's retaliation claim shall proceed to trial.

**IT IS SO ORDERED.**

DATED: September 1, 2005

                                        <u>s/ Clifford J. Proud</u>
                                        **CLIFFORD J. PROUD**
                                        **U. S. MAGISTRATE JUDGE**