IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GLORIA JEAN DIXON,** )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>**ILLINOIS DEPARTMENT OF** )<br>**NATURAL RESOURCES, et al.**, )<br>)<br>Defendants. ) | Civil No. **02-1208-CJP**[1] |

## ORDER

**PROUD, Magistrate Judge:**

Before the Court is plaintiff Gloria Jean Dixon's motion for a new trial, pursuant to Federal Rule of Civil Procedure 59, and the defendant Department of Natural Resources' response in opposition. **(Docs. 107 and 109).**

Plaintiff Gloria Jean Dixon, who is a black African American, was terminated from her job with the Illinois Department of Natural Resources and subsequently filed suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. **(Doc. 1).** Only plaintiff's retaliation claim against the defendant Illinois Department of Natural Resources proceeded to trial. **(Doc. 87).** At the close of plaintiff's case-in-chief, the defendant Department moved for and was granted judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a). **(Transcript of Trial ("Tr."), pp. 412-421; and Doc. 105).** As a preliminary matter, the Court ruled that, consistent with *McGoffney v. Vigo County Division of Family and Children*, 389 F.3d

---

[1]In accordance with 28 U.S.C. § 636(c), upon the written consent of the parties, U.S. District Judge Michael J. Reagan referred this action to the undersigned Magistrate Judge for all further proceedings and final resolution. **(Doc. 66).**

1

750, 752 (7th Cir. 2004), based on what is contained in her EEOC complaint, plaintiff is limited to events from December 1, 2001, through May 8, 2002, when she was discharged.  Plaintiff would have the relevant period commence May 1, 2001, when she lodged a "discrimination" complaint with her supervisor, which referred to a "hostile environment."  (*See* **Doc. 72, Exhibit 22).**  The Court went on to conclude that plaintiff had failed to establish she had engaged in statutorily protected expression and that there was a causal connection between any protected expression and the adverse employment action taken against her, which are two of the three elements of the *prima facie* case for retaliation.

　　　Plaintiff now argues her May 1, 2001, grievance and complaints to the site supervisor that she was being harassed are factually related to the  EEOC charge and qualify as protected expression, and put the defendant on notice that plaintiff perceived that she was retaliated against due to her race.  Plaintiff also contends there was sufficient evidence from which one could infer a causal connection between racial animus and the disputes that resulted in her discipline and termination.  From plaintiff's perspective, "[t]he disparity in performance evaluations, the repeated conflicts between Ruth Kendall and Plaintiff and the "old hag" comments by Kendall support an inference that that [sic] the disputes with Kendall stemmed from racial animus."  **(Doc. 107, p. 5).**  Plaintiff acknowledges that the Site Superintendent testified that Kendall had no input in the charges and disciplinary recommendations at issue.  Nevertheless, plaintiff argues that the jury should have been permitted to consider whether there was a "cat's paw" scenario involving Kendall provoking plaintiff on those days on which she filled in as plaintiff's supervisor, and Kendall's role doing all of the Site Superintendent's typing and e-mailing.

## Analysis

Federal Rule of Civil Procedure 50(a)(1) authorizes a court to enter judgment as a matter of law against a party "if . . . a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." "'Judgment as a matter of law is proper only if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case, viewing the evidence in the light most favorable to the nonmovant.' *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001), citing *Jones v. Western & Southern Life Ins. Co.*, 91 F.3d 1032, 1036 (7th Cir.1996)." **Mutual Service Casualty Insurance Co. v. Elizabeth State Bank, 265 F.3d 601, 612 (7th Cir. 2001).** Plaintiff has sought relief pursuant to Federal Rule of Civil Procedure 59, which provides for a new trial "for any reason for which rehearings have heretofore been granted in suits in equity in the courts of the United States."

Section 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because the employee opposed a practice made unlawful by Title VII, even if that underlying activity does not itself violate Title VII.  **42 USC 2000e-3(a); and *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994).**  In other words, Title VII protects an employee from "retaliation for complaining about the types of discrimination it prohibits." ***Miller v. American Family Mutual Insurance Co.,* 203 F.3d 997, 1007 (7th Cir. 2000).**  "To establish a *prima facie* case for unlawful retaliation, a plaintiff must prove three elements: (1) she engaged in statutorily-protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." ***Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (quoting *Krause v.***

***City of La Crosse,*** **246 F.3d 995, 1000 (7th Cir. 2001)).**  The Court found that, viewing the evidence in the light most favorable to plaintiff, there were no material questions of fact and plaintiff had failed to establish a *prima facie* case for unlawful retaliation.

Plaintiff's EEOC complaint– filed *after* she was terminated– does indicate she was complaining about a "continuing action," but she also clearly indicates that the discrimination took place, at the earliest, December 1, 2001, and, at the latest, May 8, 2002.  In addition, the EEOC complaint specifically lists the disciplinary actions she perceives were unwarranted:  (1) her ten day suspension December 17-27, 2001; (2) her May 8, 2002, suspension pending discharge; and (3) her actual discharge.  **(Plaintiff's Exhibit 28).**  Nothing prior to December 1, 2001, is noted in the EEOC complaint.

Whether the events and complaints made by plaintiff between May 1, 2001, and December 1, 2001, are swept into the EEOC complaint really does not alter the Court's conclusion.  The May 1, 2001, grievance refers to a "hostile environment," but race or gender are not mentioned, and plaintiff's testimony about her May 2001 grievance did not mention race or gender.  **(Doc. 72, Exhibit 22).**  Similarly, plaintiff's September 2001 grievance about being suspended did not hint at any link to race or gender; she contended she was disciplined to "embarrass her" and cause "more stress and hostility."  **(Plaintiff's Exhibit 17).**  Racial comments were bandied about in September 2001, when plaintiff, her sister and Kendall had an argument, which resulted in plaintiff being suspended (for reasons unrelated to the racial comments, which were made by plaintiff's sister).  However, plaintiff's subsequent grievance about her ten day suspension did not reference race or gender.  **(Plaintiff's Exhibit 21).**  None of plaintiff's grievances even hinted at a race or gender issue.  Most telling is the fact that plaintiff

did not specifically mention of racial or gender animosity in her testimony, and there is simply nothing from which to infer any causal connection between the charges and disciplinary action taken and race or gender.  Plaintiff simply failed to establish she engaged in statutorily-protected expression because she in no way communicated or intimated to the Department that she had any issues regarding race or gender, and there is no extraneous evidence implicating Title VII protected expression.

Plaintiff argues: "[t]he disparity in performance evaluations, the repeated conflicts between Ruth Kendall and Plaintiff and the "old hag" comments by Kendall support an inference that that [sic] the disputes with Kendall stemmed from racial animus." **(Doc. 107, p. 5).**  Such gossamer strands are insufficient for such an inference; a mere scintilla of supporting evidence is insufficient to defeat a Rule 50(a) motion. *See **Walker v. Board of Regents of the University of Wisconsin System**, 410 F.3d 387, 393 (7th Cir. 2005).*

Plaintiff also contends there is sufficient evidence for a jury to infer a "cat's paw" scenario involving Kendall provoking plaintiff on those days on which she filled in as plaintiff's supervisor, and Kendall's role in doing all of the Site Superintendent's typing and e-mailing. Again, it is unreasonable to draw such an inference from such attenuated evidence, particularly in light of the fact that plaintiff's supervisor and the other decision-makers up the chain of command testified that they acted independent of Kendall.

Plaintiff also attempts to make much of the fact that, although Kendall was also disciplined for the May 2002 incident that was the "third strike" for plaintiff, Kendall was not fired.  Post-trial, plaintiff appears to have forgotten that she presented much evidence about the progressive disciplinary system mandated by the union she and Kendall belonged to, and the

unrefuted evidence that that was the first time Kendall had been disciplined.  **(Tr. p. 399).**

**IT IS THEREFORE ORDERED** that, for the aforestated reasons, plaintiff Dixon's Rule 59 motion for a new trial **(Doc. 107)** is **DENIED** in all respects.

**IT IS SO ORDERED.**

**DATED: April 28, 2006**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**
